on behalf of the defendants and police. We have with us Mr. Christopher A. White and Mr. C. Jeffery Dust on behalf of the plaintiff's defense, Mr. Morris Lane Carlin. Thank you. Mr. Harvey? Thank you, your honor. May it please the court. I'm Lane Harvey. I represent the appellant. As I'm sure the court is aware at this point, this case presents an issue of first impression in the state of Illinois. This case arose out of the plaintiff's filing a complaint for fraud, intentional infliction of emotional distress, and unjust enrichment related to the defendant's death. In this case, the plaintiff's attorney, Mr. Christopher A. White, was the father of three children when in fact he wasn't. The concept of paternity fraud had been recognized in Illinois prior to filing this case, the case of Cole vs. Zwerin. In this case, the issue came before the court on motions for summary judgment based upon statute of limitation issues. The trial court applied the statute of limitations in the Parentage Act of 1984 and concluded as a matter for summary judgment that the statute of limitations had run and granted summary judgment. And obviously you take issue with that, right? I absolutely do, your honor. There is no case in Illinois in which the Parentage Act statute of limitations has been applied in this circumstance. We're talking two years, aren't we? They're talking two years in the statute of limitations. What about the tort of intentional infliction? Isn't that a two-year statute of limitations? No, no. My point about the continuing tort was that after, after the trial was concluded, there was a claim of a continuing tort. And the court, the tort continued, I believe, if you examine the facts of the case and what the trial judge found, the continuing conduct was not continuing. They still had sexual relations up until the present time? No, no. My point about the continuing tort was that after, after the DNA test was done, the wife continued to deny and vehemently deny that the relationship existed up until January of 2012. I think there is at least a minimum question of fact as to whether that conduct is outrageous and continued to inflict emotional distress. How is denial any different from admission? Well, if she had admitted it, then wouldn't he have been more egregiously traumatized, but the benchmark or the timeframe would have started from then, according to your argument? What I think, Judge, is had she admitted it initially, there would not have been the additional year of distress in coping with her continuing attempts to deny after, in the middle of a 40-year marriage, when all of those issues could have been resolved. Now, the Feltmire case basically says the statute of limitations starts when the egregious conduct commences. It doesn't end until the egregious conduct ceases. In this case, my submission to the court is that... ...the egregious conduct is not limited to that. The egregious conduct may take multiple forms. It did in Feltmire. In Feltmire, the egregious conduct amounted not only to the physical beating of the wife... Was there DNA evidence in Feltmire? No. The issue in Feltmire was not the issue of paternity fraud. The issue was domestic violence, both physical and emotional. And the point that I make about this is that the infliction of emotional violence may be a separate and distinct kind of act, but it can still be outrageous and can still be part of the overall pattern of outrageous conduct that gives rise to intentional infliction of emotional distress. Let me strike this down a little bit, because there's some key points going at her, as you've alluded to. Lewis went to her in 2011 and said that they confronted her with the results of the DNA test, correct? Yes. And what was her response at the time? My recollection from the record is she said she would have to talk to her counselor about that. And then she testified finally in 2015, as I read the record, that she continued to believe that Lewis was the children's biological father, correct? Yes. Okay. And then she says that at some point she came to believe that the other man is the children's biological father. So is there any knowledge that she was aware of this specifically or should have been aware prior to Lewis confronting her with the DNA? Well, I guess what I think, Your Honor, in the face of the facts, at least as I understand them to be, first, she knew she had had the affair with Mr. Foth, and that had been concealed. Secondly, when confronted first with the preliminary DNA, and I'll use that term advisedly, the preliminary DNA type stuff that Lewis had sort of clandestinely gathered the things, and then the formal DNA test, which clearly by November of 2010 she was aware of, she continues to say, well, no, they're your children. Well, how do you contend with this language? False representations which form the basis of the underlying cause of action ordinarily do not constitute fraudulent concealment under this act in the absence of a showing that misrepresentations also tended to conceal the cause of action. Her misrepresentations didn't tend to conceal the cause of action. It was just her self-denial. Well, there are two issues there, Judge. The one issue goes to the application of what is the appropriate statute of limitations. The other issue goes to whether her continuing denial was outrageous conduct that would continue the tort of intentional infliction of emotional distress. So my submission to you is there are two separate issues there. I think you're probably right, but tell us, you're saying the Parentage Act doesn't apply, statute of limitations doesn't. Correct. Tell us why the suit was timely under the individual statutes applying to these causes. Isn't there a problem with those absent your continuing fallback argument? No, and I say that for this reason. There would have been, but for the application of the Parentage Act statute of limitations, a five-year statute for fraud from discovery. The trial court found that. Right. And I don't think there's any question that there is any minimum, a question of fact as to that. So that but for the application of the Parentage Act, there is no question that we would have been within the statute for the filing of the fraud action. Secondly, the question of fact and the other statute of limitation issue absent the Parentage Act is when did the continuing tort cease under the Fellmire claim? The continuing tort ceased, in our view, in January of 2012 when she finally acknowledged what had happened. I like your theory, which is if there is an auto accident and A suits B, the statute of limitations doesn't run until B admits that they're negligent. Because that seems to be your argument. Not at all, sir. Not at all. I submit to you that it's a different issue. Negligence is a different thing than intentional infliction of emotional distress. Intentional infliction of emotional distress arises out of intentional conduct. How does admission of the fact relate to extending the trauma? How does it even relate to terminating the trauma? Such that you could file suit now if you wanted to if I brought your argument that there's emotional distress here. I don't see how an admission that this was improper terminates the trauma. I don't think that Mr. Downs is no longer an extremist. I think your argument is wonderful when it points out that there is a continuing injury here. But I don't necessarily buy your argument that the injury is continuing because finally somebody admitted it. No, I'm not suggesting that the admission stopped the injury. What the admission stopped is the outrageous conduct. In the Feltmire case, and I know a bit about the Feltmire case because I represented the plaintiff. In the Feltmire case, her injuries didn't stop because the guy stopped abusing her. The injuries continued after the abuse. The question was when did the abuse stop for purpose of beginning the statute of limitations? There's a distinction between whether or not the injury stops when she confesses. And whether or not her continuing to deny continues the outrageous conduct which contributes to the injury. And there is a distinction between the course of conduct and the injury. The course of conduct is the portion of this on which the statute of limitations is determined. The fact that Mr. Downs would continue to have significant psychological trauma upon learning that his children or the people that he thought his children weren't, that would have happened in any event. The question becomes when did the conduct which contributed to the continuing injury stop? My submission is there's a question of fact about that. You cite in your brief DeLuna versus Barsiago? Yes. And in that case, the attorney engaged in affirmative acts of concealment that the Supreme Court discussed. He told the clients that their, quote, medical malpractice, unquote, was going very well, that their case was going very well. Yes. When, in fact, there was not even a case pending. That's correct. In this case, what affirmative acts of concealment did Christine or Edward Foth engage in? What affirmative acts of concealment did they engage in? For roughly 40 years, they told Lewis. I'm talking about during the period after the discovery of DNA. No. There's no affirmative acts of concealment during that period of time. What there was during that period of time is continuing outrageous conduct, certainly on the part of Christine. But they didn't take any acts, there were no affirmative acts to conceal the cause of action because your client knew he had a cause of action, correct? It certainly adds to the fraud and certainly adds to the unjust enrichment. I would confess that that's true. The question, and at least as I understand where Your Honor is going with this, the question is the application of what is the appropriate statute of limitations. And so that gets to the question, frankly. Is parentage involved? Yes. And I submit to the Court, frankly, parentage in no sense of the word that is understood under our statute is involved in this case. Other than your client's allegation that he is not the biological father of these children, these children were fathered by? Yes, absolutely. And there's a number of reasons that I would submit to the Court that the Parentage Act doesn't apply in this situation. Isn't parentage at issue in the case? No, it is not. Not in any sense. If this case were to go forward, you'd have to prove in order to sustain your allegations that the defendant is the biological father. Sure, but that's different than parentage. And I would simply refer you to Capp v. Alexander. Now, the thing that we have to look at, the thing that, in my view, the trial court never examined, is why do we have a Parentage Act in this State to begin with? The policy behind the Parentage Act is set forth very clearly in Section 1.1 of the Act. It says the law recognizes the right of every child to the physical, mental, emotional, and monetary support of his or her parents under this Act. This case, brought by Mr. Reynolds, has nothing to do with any of that. Doesn't this case have an emotional impact on those children, even though they are adults? I don't know that we know that one way or the other, Your Honor, because, first of all, the case doesn't directly involve the children. It is a case by Lewis against Christina and Mr. Fulff. So the children, at this point, are 30s and 40s age-wise, so there is no, quote, unquote, parent-child relationship at stake in this case. In other words, Lewis is not seeking any findings in any way that would implicate his relationship with the children. Not whatever. Although the trial judge did say in her ruling that strong judicial policy favors finality of judgments, especially in the context of parentage determination. So she clearly, the trial court clearly found a parentage argument. Well, and she was incorrect in making that finding for a couple of reasons. Number one is neither the children nor their legal relationship with Lewis are an issue in this case. Because he wants to still have the relationship with his children because of the presumption of paternity, because he was married to the mother at the time, correct? Well, that and the fact of the business is, Judge, at this point, and we would know this, those of us who have children who are over the age of majority know this because our children choose, after the age of 18, to have a relationship with us or not on whatever basis they choose. And the point of that is there's nothing in this action that implicates any legal relationship with the children. And if you look at Kapp v. Alexander in the defining of the terms under Section 9A, and I would ask you to please look at the 214 L.F. 3rd, 416, and 417, where the Kapp court discusses that. Clearly, parentage involves more than being a biological sperm donor in this case. And in this case, the only issue that would relate to anything is that. We have provided you with a copy of the Miller case from Oklahoma. And I would simply ask you to read, because that case is absolutely parallel to this case in every respect, I would ask you to read paragraphs 18 through 21 of that case because it is directly in point here. Why do you say the wife is a fiduciary in so far as nondisclosure? I think, Judge, that any, in my view, and I think any marital relationship necessarily involves trust. A fiduciary relationship is one, first and foremost, of trust. And it is perfectly reasonable for a spouse to repose trust in the other spouse. Well, that's certainly a logical feeling argument. Are there any cases that say that husband and wife, by virtue of the relationship, become fiduciary obligations to each other? I don't think there's a case that discusses it in any particular context. Because what I think, Your Honor, is that when you look at fiduciary relationships, and we all understand that fiduciary relationships may arise without the existence of any kind of a document, but when you look at the circumstance in which trust is reposed and accepted, those may be so widespread as to be incapable of some specific test. In this case, as the trial judge found, Ms. Downs, for years and years and years and years and years, throughout these kids' lives, referred to Lewis as their dad and referred to Lewis in every way as being the father of those children. I don't recall, and I passed the bar in 69, a case where either spouse was ever alleged to have breached a fiduciary relationship with their spouse by failing to disclose an extramarital affair. Either while it was going on, while it was suspended, or after it was terminated. And I don't disagree with Your Honor, but I would also point out that I think that's not what this case is about. Because what this case is about is throughout the period of time of this marriage, from the birth of the first child through November of 2010, she repeatedly, repeatedly referred to these children in every conceivable way as his kids, as Lewis' kids. Well, how do we know she didn't think they were Lewis' kids? Well, until the DNA test came along. Yeah, yeah, she's having intercourse with another man. It doesn't necessarily mean that he's the father, does it, of the children? What it means is, and I submit to the Court that if you look at the cases we've cited in the brief that say this, she knew what her relationship with Mr. Foth was. Well, certainly. She knew that she was having relationships with Mr. Foth within a time frame that would potentially make him the father of these children. Potentially, yes. And that is enough to give rise to the question of fact in this case, and upon which to base the cause of action for paternity fraud. Because here's the policy. And if the roles were reversed, then she suspected that he was the father at the time she could have gotten a DNA test to prove it. Absolutely, certainly. And here's the point. The question that you have to decide as a matter of policy is, are we willing to reward the defendants because they were sufficiently adept at their fraud to conceal it long enough that Mr. Downs can't have his just recommends? Explain again why it appears that it took more than two years to file the cause of action from the time that he at least got the DNA results that would have indicated or put a reasonable person on notice that regardless of the number of denials, the vehemence of denials, why he didn't file it in two years? Judge, I can't answer that question because I wasn't involved in the case. My submission to you is that the statute of limitations, and the trial judge found this, that but for the paternity action, 13215 would have extended the statute of limitations first. Second, but for the paternity finding, the statute of limitations on the fraud count would have been five years from discovery. My submission to you is, for the reasons that I've discussed, is that her continuing tort conduct continued up until January of 2012. I believe at a minimum, at a minimum, there is a question of fact as to those things which would have precluded summary judgment. And for the reasons specifically stated in Miller and more specifically set out in our brief, this isn't in any sense a parentage case. Thank you, Your Honor. You'll have an opportunity to make the follow-up. Thank you. Mr. White. Good morning, Your Honors. May it please the Court. In response to Justice McLaren's questions at the end of counsel's argument, the fact of the matter is that according to Mr. Downs' own deposition testimony, he knew in his own mind as of November 15th of 2010 that three of his children were fathered by Mr. Foth. He had the DNA evidence in his hands, and he knew that. And he further testified in his deposition that starting in 2011, he was already interviewing lawyers. And he further testified that on advice of counsel, he chose not to file a divorce case and then wanted to negotiate my client releasing her interest in his business in exchange for him not filing a maternity case. So there's plenty of evidence in the record from which to infer that he purposefully delayed filing this case. Let me ask you a point of special question. Opposing counsel's vehement that the statute of limitations in the parentage act does not apply. What's your response? What's your assessment of that position? Well, so there's two issues. One would be the statute of repose, and the other would be the statute of limitations. The statute of repose not being applicable depends upon two things. One, the court finding that the fraudulent concealment statute applies to limitation provisions under a separate act, not under the limitations act, bearing in mind that De Luna found that the statute of repose for the attorney malpractice, which is in the limitations act, the fraudulent concealment statute should apply to that because they were both with the same act. The simple issue is he argues the parentage act doesn't apply. And his argument is that Lewis is not seeking any kind of declaration or relief or findings related to the parent-child relationship at all. His position appears to be it's irrelevant to this case. True. And it's not relevant to the case because why is it not relevant? Well, he requires to recover under any of his theories a judicial finding that Mr. Foth is the father of these three children, that he is not the father of these three children. We say biological father. Biological father, correct. Although, what then flows from that? What would be, what is the impact of such a finding? Say in a probate proceeding, Mr. Downs remains the father under the parentage act. He was the presumptive father. He's the father on the children's birth certificates. Nothing's going to change going forward. Except that claims of heirship could still be at issue brought by the children. Should we consider, even consider the potential of what might happen in the future? Well, I believe, Your Honor, that when we say that only the biological relationship is at issue in this case, I use these as examples for the fact that there are potential implications beyond the case and that it's not really just the biological relationship that is at issue. It is the legal relationship that is at issue. In fact, Mr. Downs frames the issue as such in his first amended complaint. He says he was deceived into assuming the legal obligations that flow from fatherhood. And he's seeking to get back from Mr. Foth the monies that he paid to support the children all those years. Indeed, that's correct. Therefore, it does, actually does involve parentage obligations because he's trying to recoup what he paid in to support those children over the years. Indeed, and also proving that those were, in fact, the legal obligations of Mr. Foth. So it's both things. And I was thinking on the way over, sort of an interesting counterfactual would be, what if this lawsuit had been filed when, what if in November of 2012 when this lawsuit had been filed, the youngest of the Downs children was three, ranging up to age 12? All of the arguments that they are making for not applying the Parentage Act, statute of limitations, would be the same arguments that they could apply here today. Mr. Foth could say, oh, I'm just trying to recover what I've already spent on these children. Or maybe he'd say, I'm trying to recover not just what I already spent, but also what I have in the future. Mr. Foth or Mr. Downs? I'm sorry, Mr. Downs. I apologize. I meant Mr. Downs. Mr. Downs could be saying, I'm trying to recover just what I've spent so far. One would feel the specter of the Parentage Act, statute of limitations, a lot more closely in such a case. And all the arguments are still the same. We've had those cases, and we've rejected the claims that you're not the father, because you're the father if you've raised the children in paid support with knowledge. You can't take it back. Indeed. Once the two years have passed, from knowledge, you're the father under the statute of limitations, irrespective of whether the statute of repose is active. On that point, if we were to decide that the Parentage Act does not apply, are his causes of action still viable under the individual applicable limitations period? No. Tell us why not. Okay. So the theory for not applying the two-year injury statute of limitations to the intentional infliction of emotional distress claims is that it was a continuing tort. The only evidence in the record that I recall is what was alluded to earlier, that in September of 2011, so now 10 months after he has all of the DNA results, he confronts Ms. Downs, and Ms. Downs responds, I need to talk to my therapist, and then she admits it in January of 2012. That is the only concrete evidence in the record of some continuing tort, other than just his general obligation that she continue to deny that the relationship exists. But he acknowledges, again, as early as December of 2009, that he was suspected that Mr. Foth was the father, that in 2009 he was suffering distress, and that even after he filed the lawsuit, he continued to suffer emotional distress, had trouble sleeping, those sorts of allegations. So I believe, Justice Briquette, by your theory, if it was a continuing tort then, and Ms. Downs still, there is evidence in the record that she said for a period of time she believed that he was the father, but she also said in her deposition that she doesn't know whether he's the father. So in that theory, it could still be a continuing tort today. What's your response to my question of Mr. Harvey relative to your client being a fiduciary which would add burdens upon her relative to disclosure? They allege that she was a fiduciary in their continuing. And I filed a motion to dismiss, citing case law, and I wish I had it off the top of my head, and I'm sorry I do not, that there is no fiduciary relationship as a matter of law, that it needed to be factually pled, and that it wasn't pled, and the order was entered striking the allegation of a fiduciary relationship. So that is contained in the record, at least. That is contained in the record, Your Honor. Let me just say about the fraudulent concealment issue. As Justice Pratt noted, normally something more is required than just the allegation that creates the underlying fraud, the denial that Mr. or the denial that Mr. Downs is not the father, or the assertion that he is the father, which the testimony was came in the form of things like birthday cards signed by her and signed by the children, that sort of thing, just general statements that he was the father. The only indication in the record of any instance where he would specifically challenge her about whether or not he was the biological father came in that confrontation in September of 2011. That's all there is. There's simply nothing in the record of anything extraordinary or particular or special that Ms. Downs did or that Mr. Foth did to conceal the existence of this potential of fatherhood from Mr. Downs. Is there any allegation in the complaint that during a period of time that your client and Mr. Foth had intimate relations, but Mr. Downs did not have intimate relations? No. In fact, he acknowledges in either I believe it was in his deposition that both Mr. Foth or that he was intimate with Ms. Downs at the same time. There was evidence in the record that I think was back in the 1980s. Mr. Downs accused Ms. Downs of having an affair with Mr. Foth, and she denied it. But that is the only sort of concrete evidence of an act of fraud. And, of course, all the damages that Mr. Downs was seeking in connection with the alleged fraud were incurred during the minority or, say, the college years of these children, which all was back in the 80s and 90s long before. Do the cases from foreign jurisdictions, the Oklahoma and the Iowa case, add anything to the mix here? I don't believe so. And I would say, first of all, the act is different. The act in the Oklahoma case didn't include anything akin to Section 90 of the Parentage Act, which specifically says that the act applies to actions not brought under the act. So I think that's the controlling distinction right there. And I know the language that Mr. Harvey urged the court to look at in the Oklahoma case. There again, the Oklahoma court said, well, you're not asking ñ you're not invoking the issue of child support. You're just asking for monetary damages. This doesn't invoke Parentage Act concerns. I simply disagree with that assertion for the reasons I've already explained to the court. Thank you. Thank you, Your Honor. Mr. Thott. Thank you. Good morning, Your Honor. This is Jeffrey Thott on behalf of Edward Thoth. May it please the court, I've sat here and listened to the court's questioning, and I have not much to add on the Parentage Act aside from saying, you know, a simple plain reading of the Parentage Act. How can parentage not be an issue in this case? If parentage is not an issue in this case, my client's not getting sued. It's as simple as that. They've got to prove that Ed Thoth is the biological father of these children. Otherwise, he's not going forward. With regard to the intentional infliction of emotional distress, Mr. White was absolutely correct in his deposition and in this record. Mr. Downs testified that he thought the emotional distress began in 2009 at the 60th birthday party for his wife when people started questioning, or he in his own mind started questioning whether or not he was the father of these three children. That emotional distress. Well, did the act of inflicting the emotional distress take place at the birthday party, or did it take place at the time of conception? Well, any act that you can think of. Well, let me ask you this. Which of those two scenarios would a person more likely have some sort of intent on the act in which they were engaged? Well, it would be back in the 70s at the time of conception. But there was no emotional distress in the 70s. The only emotional distress started at the earliest 2009 and absolutely on 11-15 of 2010 when it was confirmed in Mr. Downs' mind that he's not the father of these children and he was experiencing this distress. And there's no doubt. I mean, nobody's going to stand up here and argue that he's not suffering from emotional distress upon finding out that he's not the father of these three children. But that's when the cause of action grew. When he found out he's not the father or his biological father of these three children. So he had two years from that day to file his cause of action for IIED. What about the argument that this was continuing? It's not. You know, I didn't represent the plaintiff in Feltmire, but I can quote from the Supreme Court where they basically state that a continuing violation or a tort is occasioned by continuing unlawful acts or conduct, not by continual ill effects from an initial violation. What we're talking about is continual ill effects from an initial violation. So denying was not what was in there? As to Feltmire? No. Because there's no denial. Honestly, the record before you is he was as surprised as anybody. And he did not try to conceal anything in this record. Other than his relationship? Perhaps. I mean, you know, really he was stunned. I think that's pretty much what the record is going to be for you. And 13215, while we're at it, the fraudulent concealment statute, that can't possibly work because he had the entire statute. 13215 does not magically transform a two-year statute of limitations to a five-year statute of limitations. It just doesn't. You're saying that a two-year statute of limitations does not become five years based upon the fact that someone has fraudulently concealed. The cause of action that had it been known about would have been a two-year limitation. I think I understand your question. What I'm saying is... You don't have three more years on him because he supposedly fraudulently concealed it. Correct. Especially when the discovery of the fraudulent concealment necessarily triggers the approval of the two-year statute. That's what happened. The game was up in 2015. Or 2012. I'm confused. In 2010. So if there was a fraudulent concealment and he learned about it... Never mind. It's semantics. It's semantics, but the bottom line in this case is that the fraudulent concealment and the infliction of emotional distress are one and the same. He found out about both at the same time. It's two years. There's a difference between tolling a statute of limitations and extending it. Do you see the difference or not? I do because tolling a statute of limitations could be something like a discovery rule or something of that nature. I think 13-215 tolls. It doesn't extend. With regard to the Oklahoma case, the only redeeming factor in that case is they threw out the unjust enrichment count. Any questions? No. Thank you. Thank you. Mr. Harvey. Thank you. I think the first place we need to start is with some definitions because I noticed the definitions were pretty much missing in the arguments. And the definitions that are important in this case are fully set forth in terms of how the act is to apply in the Cap case. And I would simply ask you to look at Cap at 217 Allot 3rd, 416, and 417 because what the Cap case says in the first instance is, and this is at a time when the statute was enacted and before the statute was enacted, there were all sorts of a variety of procedural tools used to try to establish rights to children to whom there was no marriage between the parents. The Parents Act of 84 was adopted to create some uniformity in that, and that's why Section 9A was added to the statute so that if you look at 416 in that, it's made very clear that the purpose of that is so when you start talking about things like custody, visitation, child support, and these sorts of things, there is a uniform rule for addressing it. There is nothing in this case that has to do with custody, visitation, support, or any sort. Well, your client is seeking to be paid back for the money that he spent raising the children. Well, and I would say that, I would say this. Is that correct or not? After fashion, it is in some respects and not in some respects because, first of all, there's never any order that directed Louis Downs to pay any amount of money for any reason. Well, of course not. He's the presumptive father, and he acted like the father and did the right thing. He has a father. His client morally, obviously, has been wronged. He's been harmed. There's no question about it, and I think the trial courts, she went to great pains to spell it out. And I would ask you to look at the Iowa court, the Dyer case, the Iowa case, because this case, in some respects, is similar to that in that the money that Louis Downs spent, he spent voluntarily. He didn't spend it because some court says, okay, Lou, you've got to give the kids money, and you've got to do this and that, and you've got to do everything else. The Dyer case, which is a 2012 decision deciding that this court would be applicable in Iowa, specifically found that the element available for recovery were voluntary payments made by a parent of a child when the parent had been fraudulently led to believe that he was the child's parent. He paid that money not because some courts say he had to, but because he thought he was the child's parent, and as a result of that fraudulent inducement, he made these expenditures. That's exactly what the Dyer case says in Iowa. That's exactly what happened in this case. Lou did what he did because he was induced to believe that these children were his. And the other thing about the Dyer case you might want to take a look at. There's no similar provision in Iowa with respect to the Parentage Act, the language in the Parentage Act here, correct? Well – With regard to the application of the Parentage Act to any – I think that that's true, but I would get back to this, Judge, and you're referring to Section 9A of the Parentage Act. If you look at the Kapp case, the Kapp case puts what Section 9A is intended to do in its proper context. At 416 and 417 of the Kapp case, the court said that these things, parent-child relationship, etc., were terms of art and that they involve more than the biological relationship between the parent and the child. And it talks about, in our view, parentage is an issue. That phrase in 9A is parentage is an issue whenever a parent-child relationship is the basis of some right, privilege, duty, or obligation. And it again refers to parent-child relationship. There's no issue in this case that affects the parent-child relationship as that term is defined in the Parentage Act. At one point that should be raised here immediately, counsel in the course of this argument, counsel from the stouts, makes some reference to what might happen in the future with regard to the Probate Act or heirship. If you look at Section 8C, 8C specifically accepts, EX, accepts actions under the Probate Act from statute of limitations in the Paternity Act. So it has no impact on that at all. This is not a case in which parentage is at issue. This is a case of common law fraud. And for the reasons set forth in the Oklahoma case, the issue is not one that will affect parentage in any fashion. The fact of who was the sperm donor for these children is essentially coincidental and a part of the fraud, not a part of any parentage or legal relationship between Lewis and his children. And the Parentage Act should not apply. Thank you. Thank you. This will be taken under advisement. This is the last case on the call. Court is adjourned.